# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ANDREW RAMDEEN,**

        **Plaintiff,**

**v.**                                    **Case No:  6:15-cv-139-Orl-28TBS**

**PRUDENTIAL INSURANCE COMPANY
OF AMERICA and THE BANK OF NEW
YORK MELLON CORPORATION,**

        **Defendants.**

---

## ORDER

In this case brought under the Employment Retirement Income Security Act of 1974 ("ERISA"), Plaintiff Andrew Ramdeen challenges the termination of his short-term disability ("STD") benefits by Defendant The Bank of New York Mellon Corporation ("BNYMC") and the denial of long-term disability ("LTD") benefits by Prudential Insurance Company ("Prudential"). Both parties filed Motions for Summary Judgment. (Docs. 38 & 43). Upon consideration of the Motions, Responses, and Replies, (Docs. 38, 43, 45 & 50), Mr. Ramdeen's Motion for Summary Judgment must be denied and Defendants' Motion for Summary Judgment is due to be granted.

## I.    Background

BNYMC provides STD benefits to its eligible employees through a self-funded "payroll practice" that provides benefits to sick or injured employees for up to twenty-six

weeks. (AR 002).[1] An employee who is disabled after the STD benefits expire may then seek LTD benefits, which BNYMC provides through an insurance-based group contract with Prudential. Prudential is the administrator of the LTD plan.

In October 2008, while working as a vice president for a BNYMC subsidiary, Mr. Ramdeen suddenly collapsed at work from a stroke. (AR 117, 364). At that time, he was diagnosed with, among other ailments, "left carotid dissection with right hand resulting in the left cerebral infarction with the right hemiplegia and aphasia[;] mobility, self-care, and communication deficits[;] hypertension[; and d]eep venous thrombosis of the right lower extremity." (AR 117). Mr. Ramdeen received STD benefits under BNYMC's STD Plan while he recovered and underwent inpatient and outpatient rehabilitation.[2] (AR 117, 131, 146, 171, & 175).

After several months of rehabilitation, Mr. Ramdeen's condition improved significantly. In April 2008, his treating neurologist, Dr. Lata Bansal, stated that Mr. Ramdeen was "doing much better" and that "[o]n examination no weakness was detected." (AR 528). Additionally, "[h]is right arm strength and coordination [have] improved" along with his typing skills. (Id.). She noted, however, that "[h]e had somewhat poor coordination on the right side[; that h]is gait was hemi-paretic on the right side[; and that he's got] his right arm hanging." (Id.). Despite any weakness noted by Dr. Bansal, Mr. Ramdeen "was not given a [follow up] appointment," and he voluntarily went back to work full time on April 13, 2009. (Id.).

---

[1] Citations to the administrative record, which has been filed with the Court electronically, (see Docs. 22–33), are denoted by "AR" followed by the last three digits of the page number.

[2] STD benefits for 2008–2009 are not at issue in this case.

When Mr. Ramdeen returned to work, he did not perform all of the same tasks that he had done before his stroke. (AR 135, 437; Pl.'s Mot. Summ. J., Doc. 38, at 4, 14; Pl.'s Reply, Doc. 45, at 9; Defs.' Mot. Summ. J., Doc. 43, at 3). Instead, he "worked [with] deficits as [BNYMC] allowed [him] to perform . . . alternate tasks than what he was doing prior to his [stroke]." (AR 437). He then worked continuously for four years—from April 2009 until July 2013—when he stopped working and filed another claim for STD benefits. (AR 638, 640). At that time, Mr. Ramdeen's request for STD benefits was approved in part.[3] (AR 629).

In support of continuing his STD benefits over the next several months, Mr. Ramdeen submitted reports from his treating physician, Dr. Rajan Kapoor. Dr. Kapoor filled out a Statement of Work Capacity and Impairment based on a July 24, 2013 visit stating that Mr. Ramdeen's primary diagnosis was hypertension. (AR 503). Dr. Kapoor further noted that Mr. Ramdeen's other complaints included "Hyperlipidemia, CVA Left Carotid disection [sic], Right Leg DVT" and that physical examination findings were "unremarkable/ weakness (R) Side due to Prev. stroke." (Id.). He concluded that Mr. Ramdeen was "unable to work at this time." (AR 502). Dr. Kapoor filed an Update of Work Capacity and Impairment in September and October 2013,[4] both of which largely echoed the initial assessment but included "Pain Hip/Pelvic" and "Dyslipidemia" among his impairments. (AR 505).

---

[3] BNYMC denied STD benefits to the extent they were requested for the time prior to July 24, 2013, because the "[m]edical information submitted by [Mr. Ramdeen's] provider indicates a disability starting July 24, 2013, [and] no time prior to this time is indicated on the documentation provided." (AR 629 (emphasis omitted)).

[4] The record also contains Dr. Kapoor's progress notes from this same time period, but they are almost entirely illegible. (See AR 506, 519).

After extending Mr. Ramdeen's STD benefits for several months, (AR 615, 628), BNYMC ultimately terminated those benefits on October 30, 2013, concluding that the records received from Dr. Kapoor did not support a continuing disability.  (AR 599).  Mr. Ramdeen appealed BNYMC's decision that same day.  (AR 590, 593).  In support of his appeal, Mr. Ramdeen included Dr. Kapoor's progress notes dated October 31, 2013—the day after STD benefits were discontinued—stating that Mr. Ramdeen is "not able to make decision[s]" and "not able to work full time."  (AR 524).

In connection with Mr. Ramdeen's appeal, a STD administrator on behalf of BNYMC spoke with Mr. Ramdeen in December 2013 seeking additional information about his condition and explaining that Dr. Kapoor's notes were brief and without much detail.  (AR 538).  Mr. Ramdeen replied that "his memory, especially long-term is shot" and that "he didn't remember his job title or what [he used] to do for [BNYMC]."  (Id.).  He further stated that "he struggled at work, and was not able to keep up, but [BNYMC] kept him on" and that "he did not receive poor performance reviews."  (Id.).  He said that "he cannot do typing and writing [for] his job due to his cognitive issues."  (Id.).

BNYMC retained Dr. Stephen M. Selkirk M.D. Ph.D., who is board certified in Psychiatry & Neurology, to conduct a file review of Mr. Ramdeen's condition.  (AR 584, 690).  Upon a review of all of Dr. Kapoor's submitted reports, Dr. Selkirk issued a report opining that:

> [Dr. Kapoor's] office note from 10/31/2013 notes right-sided weakness on exam and that the claimant is "not able to make decisions." . . . While the records do support the claimant to have right-sided weakness, which would preclude activities such as heavy lifting and working at heights, there is no evidence provided to support the claimant's inability to perform the duties of his own sedentary occupation.  There is no clinical evidence of cognitive

dysfunction or cognitive impairment noted in the records provided for review.[5]

(AR 584).

Based on the opinion of Dr. Selkirk, the available records from Dr. Kapoor's office, and the 2008–2009 notes from Mr. Ramdeen's treating neurologist after his stroke, BNYMC affirmed its denial of STD benefits on January 7, 2014.  (AR 689).  Mr. Ramdeen appealed that denial and shortly thereafter filed a claim with Prudential for LTD benefits. (AR 363, 580, 578).  In light of Mr. Ramdeen's dual claims for STD and LTD benefits—and noting that Mr. Ramdeen did not submit any additional information to support his requested STD benefits—BNYMC decided to wait until the outcome of Mr. Ramdeen's claim for LTD benefits before making a decision on Mr. Ramdeen's second-level STD appeal.  (AR 500).

In evaluating Mr. Ramdeen's claim for LTD benefits, Prudential's investigation found that "he is not using any assistive device . . . [and] not doing any [physical therapy/occupational therapy]."  (AR 429).  Prudential requested additional Attending Physician Statements from Dr. Kapoor on December 16 and 17, 2013, but there is no response reflected in the record. (AR 498, 495).

At the request of Prudential, Dr. Barbara Parke, who is board certified in Physical Medicine and Rehabilitation, conducted a full review of Mr. Ramdeen's file[6] and found:

> Documentation supports that when Mr. Ramdeen returned to work in April 2009, 6 months after his [stroke], he was still having functional difficulties with his right (dominant) hand and his language skills.  It is likely he did [not

---

[5] Dr. Selkirk remarks that he was never able to talk with Dr. Kapoor despite several attempts to reach him by telephone.  (AR 583).  Instead, he spoke to Dr. Kapoor's nurse for five minutes.  (Id.).   The nurse stated that "the claimant is able to work[,] . . . does not require a cane[;] . . .  his speech seems normal[;] . . . he does have some right sided weakness . . . ." (Id.).

[6] Dr. Parke attempted to speak with Dr. Kapoor on the phone, but Dr. Kapoor did not answer or return her calls.  (AR 426, 428).

return] to his previous position that required executive functioning, math and communication skills, and management duties.

As there is no documentation of a new central nervous system event (i.e., stroke), more likely than not, his decrease [of] function[ in] language and with his right hand have been present since 2008 and 2009. Available documentation does not support a change in physical, organic, or physiological status that would have resulted in a new functional impairment in July 2013.

(AR 427–28). In light of Dr. Parke's opinion and a review of the records, Prudential denied LTD benefits in January 2014. (AR 482). Thereafter, citing Prudential's denial of LTD benefits, BNYMC denied Mr. Ramdeen's second appeal regarding termination of his STD benefits. (AR 500).

Mr. Ramdeen then appealed Prudential's denial of LTD benefits. (AR 274). During Prudential's reassessment, it obtained an independent peer review from Dr. A. Wayne Meikle, who is board certified in internal medicine among other specialties. (AR 239). After a full review of the records, Dr. Meikle opined that Mr. Ramdeen "does have right-sided weakness from a previous [stroke], but it is obvious from review of the records that he is capable of utilizing his right side." (AR 237). Dr. Meikle opined that Mr. Ramdeen "is not totally impaired" and that instead "this impairment seems to be mild[; i]t would not affect his ability to sit, stand, walk, or reach." (Id.). Further, "[t]he reported conditions of aphasia, memory issues and inability to focus for a long period are not currently supported by the records." (AR 238). Dr. Meikle concluded that "[t]he records from Dr. Kapoor also do not document that he has an impairment so that he is unable to work. The review of all the records . . . indicat[es] that he is capable of mobility, a thought of action so that he does have the capacity for work. While he is restricted, he is not limited in his ability to perform his duties." (Id.).

Prudential also obtained an opinion from Frances Grunden, a vocational rehabilitation consultant, to determine whether, based on Mr. Ramdeen's previous medical assessments, he had the capacity to work in his current position. (AR 407–412). Ms. Grunden found that

> [b]ased upon a review of the file information . . . , the claimant's occupation appears consistent with Vice President, Financial Institution . . . requiring sedentary physical demands as indicated. The occupation requires occasional exertion of 10 pounds. Physical demands of the occupation appear within[ Mr. Ramdeen's] capacity as indicated for occasional lift/carry up to 20 pounds. No other restrictions or limitations have been provided.

(Id.).

Citing Ms. Grunden's and Dr. Meikle's opinions and a detailed summary of Mr. Ramdeen's medical history, Prudential upheld its previous denial of LTD benefits. (AR 470–74). Prudential's letter of denial contained a summary of Mr. Ramdeen's appeal rights, stating that the claimant's "appeal may identify the issues and provide other comments or additional evidence you wish [to have] considered." (AR 474). Mr. Ramdeen appealed the denial of LTD benefits for a second time but submitted no additional evidence of disability. (AR 468, 464). On May 14, 2014, Prudential upheld its denial of LTD benefits, noting that "no new documentation has been submitted on second appeal." (AR 464).

After exhausting his appeals, Mr. Ramdeen now seeks in this Court to (i) recover LTD benefits from Prudential and (ii) recover STD benefits from BNYMC. (Compl. at 1). Mr. Ramdeen alternatively seeks remand of his LTD claim to Prudential. (Pl.'s Mot. Summ. J. at 23).

## II.     Discussion

### A.     LTD Benefits

#### 1.     ERISA Review Standards

As other courts in this district have noted, "'[i]n an ERISA benefit denial case . . . in a very real sense, the district court sits more as an appellate tribunal than as a trial court. It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the Plan fiduciary.'" Crume v. Metro. Life Ins. Co., 417 F. Supp. 2d 1258, 1272 (M.D. Fla. 2006) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 17–18 (1st Cir. 2002)); see also Curran v. Kemper Nat'l Servs., Inc., No. 04–14097, 2005 WL 894840, at *7 (11th Cir. Mar. 16, 2005). "Accordingly, [w]here the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.'" Crume, 417 F. Supp. 2d at 1272 (alteration in original) (quoting Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999), abrogated on other grounds by Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 965 (9th Cir. 2006) (en banc)).

"ERISA itself provides no standard for courts reviewing the benefits decisions of Plan administrators or fiduciaries." Blankenship v. Metro. Life. Ins. Co., 644 F.3d 1350, 1354 (11th Cir. 2011). However, the Eleventh Circuit "established a multi-step framework to guide courts in reviewing an ERISA Plan administrator's benefits decisions." Id. The six steps in this framework are:

> (1)     Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees

8

with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2)     If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3)     If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4)     If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5)     If there is no conflict, then end the inquiry and affirm the decision.

(6)     If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

Id. at 1355.

Following this framework, the Court must first assess whether Prudential's decision to deny Mr. Ramdeen's claim for LTD benefits was "wrong" under the *de novo* standard— that is, whether the Court disagrees with that decision.   Moreover, "[r]eview of the Plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." Blankenship, 644 F.3d at 1354.   The court must "'review both the administrator's construction of the Plan and concomitant factual findings.'" Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241, 1246 (11th Cir. 2008) (quoting Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1451 (11th Cir. 1997)).

　　　　2.    *Analysis*

Review of Prudential's decision to deny Mr. Ramdeen's claim for LTD benefits does not proceed beyond the first Blankenship step—the decision was not *de novo* wrong.   Mr.

Ramdeen has the burden of establishing a disability,[7] and he failed to meet that burden. Glazer, 524 F.3d at 1247.

Under Prudential's LTD plan, an employee is eligible to receive LTD benefits after he is continuously disabled for twenty-six weeks. (AR 037). The Plan further provides that an employee is disabled "when Prudential determines that: [(1) he] is unable to perform the material and substantial duties of [his] regular occupation due to [his] sickness or injury; [(2) is] under the regular care of a doctor, and [(3) has] a 20% or more loss in [his] monthly earnings due to that sickness or injury." (AR 035 (emphasis omitted)). As neither party disputes that Mr. Ramdeen was under the regular care of a doctor or that he lost more than 20% or more in monthly earnings due to his sickness or injury, the germane question is whether Mr. Ramdeen was unable to perform the material and substantial duties of his regular occupation due to his sickness or injury. (See AR 035).

Prudential considers an employee's "regular occupation" to be "the occupation [he] is routinely performing when [his] disability begins." (AR 035). In deciding whether an employee can work in their regular occupation with their disability, "Prudential will look at [the] occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location." (AR 035). Prudential also defines "material or substantial duties," in relevant part, as duties that "are normally required for the performance of [an employee's] regular occupation; and cannot be reasonably omitted or modified." (AR 035).

---

[7] For this reason I reject Mr. Ramdeen's argument that Prudential improperly failed to order an independent neuropsychological evaluation of Mr. Ramdeen. See Bloom v. Hartford Life & Accident Ins. Co., 917 F. Supp. 2d 1269, 1283 (S.D. Fla. 2013) (finding no error in failing to order neurological testing, noting that the burden is on the claimant to establish his disability).

Mr. Ramdeen's regular occupation was a Broker/Dealer Services Unit Manager, (AR 409), and he claims that his disability stems from his stroke in 2008 and resulting cognitive impairment.  (AR 538).  However, Prudential was not wrong in finding that Mr. Ramdeen does not fit the definition of disability as described in the LTD policy.  Although cognitive difficulties were noted right after Mr. Ramdeen suffered a stroke in 2008, Mr. Ramdeen returned to work in 2009 and worked full time for four years without a noted incident.  The relevant time for assessment of Mr. Ramdeen's condition is 2013—not 2008—and I do not disagree with Prudential's conclusion that the medical evidence does not support a finding of disability as of that date.

When Mr. Ramdeen again stopped working in 2013, Prudential obtained independent reviews of Mr. Ramdeen's medical records by Drs. Parke and Meikle.  Dr. Parke found that although in 2009 Mr. Ramdeen did not return to performing the same work duties as before his stroke, the medical evidence did not support a new decrease in functionality.  (AR 427–28).  In other words, she found that there was no explanation as to why Mr. Ramdeen could not work after four years of working without incident.  (AR 427–28).

It is irrelevant whether Mr. Ramdeen could perform the exact job duties in 2013 as before his stroke in 2008.[8]  The LTD policy states that an employee is disabled when he can no longer perform duties that are normally required for the performance of his regular occupation "*and* cannot be reasonably omitted or modified."  (AR 035).  The fact that Mr. Ramdeen performed different duties for four years without receiving a deduction in

---

[8] However, based on the medical opinions of Drs. Parke and Meikle, vocational rehabilitation consultant Ms. Grunden found that Mr. Ramdeen was indeed able to work in his occupation as it is normally performed.  (AR 407–12).

compensation, poor performance reviews, or any other indication of an inability to perform his work evidences that his former duties could be reasonably omitted or modified. (AR 035).

Moreover, Prudential was not wrong when it favored the opinions of the independent medical consultants over Mr. Ramdeen's statements and the opinions of his treating physician, Dr. Kapoor. "Although a Plan administrator 'may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician,' an administrator is not required to give special deference to the opinions of a claimant's treating physicians." Garrett v. Prudential Ins. Co. of Am., 107 F. Supp. 3d 1255, 1265 (M.D. Fla. 2015) (quoting Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003)). "The administrator also has no burden of explanation when it credits reliable evidence that conflicts with a treating physician's evaluation." Id. at 1265 (quoting Nord, 538 U.S. at 834).

Dr. Meikle's opinion that "[t]he reported conditions of aphasia, memory issues and inability to focus for a long period are not currently supported by the records," (AR 238), is consistent with the dearth of evidence of a cognitive impairment in Dr. Kapoor's reports. From July 2013—when Mr. Ramdeen stopped working—through late October 2013, Dr. Kapoor's records do not mention any cognitive impairments; rather, they state that Mr. Ramdeen's primary diagnosis was hypertension. (AR 503). In fact, the first time that Dr. Kapoor mentioned a cognitive impairment was after Mr. Ramdeen's STD benefits were terminated. Even then, Dr. Kapoor merely noted conclusorily that Mr. Ramdeen is "not able to make decision[s]" and "not able to work full time." (AR 524). Dr. Kapoor's reports contain no elaboration of a cognitive impairment, and when Prudential sought additional

information from him, none was provided.  (AR 498, 495).  Moreover, Dr. Kapoor did not return the phone calls of any of BNYMC's or Prudential's independent physicians when they sought additional information about Mr. Ramdeen's condition.  The only other evidence of Mr. Ramdeen's cognitive impairments is his own statement that "he didn't remember . . . his job title or what [he used] to do for [BNYMC]," (AR 538).  However, because Mr. Ramdeen's statements lack support in the medical records, Prudential was correct in according them little weight.

Mr. Ramdeen also argues that I should afford some leniency regarding his failure to file supportive documentation because he was unrepresented during the administrative process.  This argument is without merit.  The LTD Plan contains clear headings and easy-to-understand explanations of the requirements for eligibility.  Further, in accordance with 29 C.F.R. § 2560.503-1(g)(1)(i)-(iii), each of Prudential's notifications of denial detailed the reasons for denial, contained references to the Plan provisions, and thoroughly explained Mr. Ramdeen's appeal rights.  When Prudential noticed that Mr. Ramdeen failed to submit additional evidence with his second appeal, it notified him in writing that he could still submit additional information.  (AR 464, 468).  Despite Prudential's notice, Mr. Ramdeen supplied no further documentation.

Additionally, there is no evidence that Mr. Ramdeen's alleged cognitive condition prevented him from properly presenting his claim and appeal.  Cf. Voltz v. Chrysler Grp. LLC-UAW Pension Plan, 63 F. Supp. 3d 770, 784 (N.D. Ohio 2014) (finding a procedural defect where an administrator "ignor[ed] strong record evidence that [the claimant] may suffer from mental illness").  Mr. Ramdeen promptly responded to each of Prudential and

BNYMC's letters, clearly communicated his understanding of the appeals process, and provided other documentation during the course of the claim and appeals process.

Because I agree with Prudential's denial of LTD benefits after conducting a *de novo* review, the denial must be affirmed. Defendants' Motion for Summary Judgment on Mr. Ramdeen's claim must be granted as to the claims for LTD benefits against Prudential, and Mr. Ramdeen's Motion for Summary Judgment must be denied in this regard. Additionally, Mr. Ramdeen's alternative request for remand is denied because he has failed to show that there was a procedural error or that there was available information that Prudential failed to consider. See Levinson v. Reliance Standard Life Ins. Co., 245 F.3d 1321, 1330 (11th Cir. 2001) ("[A]s a general rule, remand to the Plan fiduciary is the appropriate remedy when the Plan administrator has not had an opportunity to consider evidence on an issue.").

### B. STD Benefits

#### 1. Summary Judgment Standard

In the Complaint, Mr. Ramdeen brings his claim against BNYMC under ERISA. However, in their summary judgment filings, the parties seem to agree that the STD benefits at issue here fall under the "payroll practice" exception to ERISA and that this claim is therefore governed by ordinary contract principles. See 29 C.F.R. § 2510.3–1(b)(2) (providing that ERISA shall not cover "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons"). Thus, ordinary summary judgment standards—rather than the Blankenship six-step framework—apply to this claim.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P, 56(a).  The moving party bears the burden of demonstrating that no genuine issues of material fact remain.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  That burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, and it may not weigh evidence or determine credibility. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

    2.    Analysis

The parties do not contend that there is a genuine dispute of material fact as to the STD claim against BNYMC.  Therefore, the sole question is whether BNYMC breached the STD Plan when it terminated Mr. Ramdeen's STD benefits in October 2013.  I conclude that it did not.

The STD Plan affords benefits when an employee has "the inability to perform [his] current job, with or without reasonable accommodation, due to an illness or injury of a physical or mental nature for at least seven consecutive calendar days, but not more than twenty-six weeks."  (AR 002).  Like his claim for LTD benefits, Mr. Ramdeen's claim for STD benefits is based on the alleged cognitive impairments that arose from his stroke in 2008. However, as discussed above, it is clear that Mr. Ramdeen was able to perform his

job with reasonable accommodations for four years, and the relevant assessment point is 2013—when Mr. Ramdeen's STD benefits were terminated. The medical evidence as of that time does not support a finding of disability.

Moreover, BNYMC did not breach the STD policy by favoring the opinions of the independent medical consultant over the conflicting statements of Dr. Kapoor. The STD Plan states that "[i]f the opinion of the employee's physician and the physician selected by the company . . . is not in agreement, the opinion of the physician . . . selected by the company . . . will prevail." (AR 001). BNYMC based its denial in part on the opinion of Dr. Selkirk, who found that that while Mr. Ramdeen has some "right-sided weakness, which would preclude activities such as heavy lifting and working at heights, there is no evidence provided to support the claimant's inability to perform the duties of his own sedentary occupation . . . [and] no clinical evidence of cognitive dysfunction or cognitive impairment noted in the records provided for review." (AR 584). Because Dr. Selkirk's opinion was directly contrary to Dr. Kapoor's opinion—that Mr. Ramdeen could not work due to his cognitive impairment—BNYMC was entitled to rely on its medical expert over Dr. Kapoor.

To the extent Mr. Ramdeen argues that Dr. Selkirk failed to conduct a fair review of the record, his argument is rejected. (See Pl.'s Mot Summ. J. at 22 ("BNYMC terminated [Mr. Ramdeen's] benefits on the basis of a five-minute telephone call between [Dr. Selkirk] and Mr. Ramdeen's treating physician's nurse.")). It is apparent from Dr. Selkirk's report that his opinion is based not just on a phone call but on the entirety of medical records provided by Mr. Ramdeen, including Dr. Kapoor's office notes with labs and results, a Doppler report, Dr. Kapoor's APS forms, and notes from Dr. Bansal from 2008–09. (AR 582).

Additionally, BNYMC did not breach the STD policy by awaiting Prudential's final decision as to the LTD benefits before denying Mr. Ramdeen's second appeal for STD benefits.  BNYMC conducted a full and fair review of Mr. Ramdeen's records prior to its initial denial of Mr. Ramdeen's first STD benefits appeal.  Noting that Mr. Ramdeen provided no additional information for consideration on the second appeal, BNYMC did not improperly wait for the outcome of the LTD appeals before finally denying STD benefits.

Further, BNYMC did not breach by failing to order an independent neuropsychological evaluation of Mr. Ramdeen.  The STD policy states that "[t]he company *reserves the right* to verify a disability by arranging for an independent medical examination and/or mental health evaluation performed by a physician and/or licensed psychologist or psychiatrist chosen by the company."  (AR 001 (emphasis added)).  This language is discretionary on its face.  Moreover, the STD Plan places the burden of establishing a disability on the claimant.  (AR 001 ("Employees requesting STD leaves of absence are required to have his/her treating physician complete the Attending Physician's Statement (APS) . . . identifying the disability and treatment."); Id. ("The employee is responsible for timely requesting STD benefits and for providing timely, complete, and accurate documentation . . . .")); cf. Bloom, 917 F. Supp. 2d at 1283.

Finally, Mr. Ramdeen asserts without further discussion that he was awarded retroactive Social Security disability benefits for January 2014 through March 2014.  (Pl.'s Mot. Summ. J. at 23; Ex. 2; Notice of Social Security Award, Doc. 38-2, at 2).  Because social security benefits were issued after BNYMC conducted its reviews and ultimate determination, and because Mr. Ramdeen makes no argument about the relevancy of the social security award in any event, this argument is rejected.

17

Because BNYMC did not breach the STD Plan in terminating Mr. Ramdeen STD's benefits, Mr. Ramdeen's Motion for Summary Judgment must be denied as to the STD claim against BNYMC.   Defendants' Motion for Summary Judgment is granted on this claim.

## III.   Conclusion

As discussed above, Mr. Ramdeen has failed to establish that he is disabled under either the LTD Plan or the STD Plan.   Accordingly, it is hereby ordered that:

1.     Plaintiff's Motion for Summary Judgment (Doc. 38) is **DENIED**;

2.  .    Defendants' Motion for Summary Judgment (Doc. 43) is **GRANTED**;

3.     The clerk is directed to enter a judgment providing that Mr. Ramdeen takes nothing from Defendants on any of his claims.  After entry of judgment, the Clerk shall close this case.

**DONE** and **ORDERED** in Orlando, Florida, on February _17_, 2016.

_____
JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties